1    **WO**

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8    Heather Marjorie Wolfe,              )    No.  CV-22-00650-PHX-SPL
                                          )
9                        Plaintiff,       )
                                          )    **ORDER**
10   vs.                                  )
                                          )
11                                        )
     Commissioner of Social Security      )
12   Administration,                      )
                                          )
13                                        )
                        Defendant.        )
14

15        Plaintiff Heather Marjorie Wolfe ("Plaintiff") seeks judicial review of the denial of

16   her application for disability insurance benefits under the Social Security Act, 42 U.S.C.

17   § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 13), Defendant

18   Commissioner of Social Security Administration's ("Defendant") Response Brief

19   (Doc. 14), and Plaintiff's Reply Brief (Doc. 15). Upon review, the Court affirms the

20   Administrative Law Judge's ("ALJ") decision. (AR[1] at 10–26; 34–51).

21   **I.       BACKGROUND**

22        On March 4, 2019, Plaintiff filed Title II and Title XVI applications for disability

23   insurance benefits and supplemental security income benefits, alleging a period of

24   disability beginning on February 3, 2017. (AR at 13). Her claim was initially denied on

25   June 10, 2019, and again upon reconsideration on March 9, 2020. (*Id.*). Plaintiff testified

26   at an administrative hearing on November 24, 2020 (AR at 59–80), after which the ALJ

27

28        [1] Administrative Record (*see* Doc. 11).

1    found Plaintiff was not disabled from February 23, 2017 through April 15, 2021 (AR at

2    26). On May 18, 2021, the ALJ issued a revised decision "to include additional analysis of

3    medical evidence that was submitted after the disability and after a disability determination

4    was made." (AR at 37). The ALJ found that the new evidence did not change the outcome

5    of the initial decision, and found Plaintiff was *not* disabled from February 3, 2017 through

6    May 18, 2021. (AR at 51). In making this finding, the ALJ concluded that Plaintiff passed

7    the first four steps in demonstrating a disability: (i) Plaintiff has *not* engaged in substantial

8    gainful activity since the alleged onset date (AR 40); (ii) Plaintiff has several "severe"

9    medically determinable physical and mental impairments[2] (AR 40); (iii) Plaintiff does *not*

10   have an impairment or combination of impairments that meets or medically equals an

11   impairment listed in the regulations, and that Plaintiff has the residual functional capacity

12   ("RFC") to perform light work with a few specific exceptions (AR 40–48); and

13   (iv) Plaintiff is *unable* to perform any past relevant work (AR 49–50). However, at step

14   five of the analysis, the ALJ found that "there are jobs that exist in significant numbers in

15   the national economy that [Plaintiff] can perform" and that "[a] finding of 'not disabled' is

16   therefore appropriate." (AR 51).

17        On February 25, 2022, the Appeals Council denied Plaintiff's request for review

18   and adopted the ALJ's decision as the agency's final decision. (AR at 1). On April 20,

19   2022, Plaintiff timely filed this action for review of the ALJ's decision. (Doc. 1). On

20   August 5, 2022, the Court received the administrative record. (Doc. 11). On October 4,

21   2022, Plaintiff filed her Opening Brief (Doc. 13). On November 3, 2022, Defendant filed

22   its Response Brief (Doc. 14). On November 18, 2022, Plaintiff filed her Reply Brief (Doc.

23   15). This Court has fully reviewed the parties' briefing and the medical record and will

24   discuss the pertinent medical evidence in addressing the issues raised by the parties.

25

26        [2] Specifically, the ALJ found that Plaintiff has the following severe impairments:
     "right tibia/fibula fracture with a history of an open reduction internal fixation surgery,
27   adjustment disorder, major depressive disorder, post-traumatic stress disorder, and
     agoraphobia with a panic." (AR 40).
28

1  **II.    LEGAL STANDARD**

2      A person is considered "disabled" for the purpose of receiving social security

3  benefits if they are unable to "engage in any substantial gainful activity by reason of any

4  medically determinable physical or mental impairment which can be expected to result in

5  death or which has lasted or can be expected to last for a continuous period of not less than

6  12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's

7  decision, the district court reviews only those issues raised by the party challenging the

8  decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set

9  aside the Commissioner's disability determination only if it is not supported by substantial

10  evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

11  Substantial evidence is relevant evidence that a reasonable person might accept as adequate

12  to support a conclusion. *Id*. To determine whether substantial evidence supports a decision,

13  the Court must consider the record as a whole and may not affirm simply by isolating a

14  "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the

15  evidence is susceptible to more than one rational interpretation, one of which supports the

16  ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947,

17  954 (9th Cir. 2002).

18      To determine whether a claimant is disabled for purposes of the Act, the ALJ

19  follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing

20  20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps,

21  and the burden shifts to the Commissioner at step five. *Id*. At step *one*, the ALJ determines

22  whether the claimant is presently engaging in substantial gainful activity.

23  § 404.1520(a)(4)(i). At step *two*, the ALJ determines whether the claimant has a "severe"

24  medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). At step *three*,

25  the ALJ considers whether the claimant's impairment or combination of impairments meets

26  or medically equals an impairment listed in the regulations.[3] § 404.1520(a)(4)(iii). If so,

27

28      [3] The impairments "listed in the regulations" are found in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

1    the claimant is automatically found to be disabled. *Id.* If not, the ALJ determines the

2    claimant's residual functional capacity ("RFC"). §§ 404.1520(e), 416.920(e). At step *four*,

3    the ALJ determines whether the claimant's RFC precludes her from performing her past

4    relevant work. § 404.1520(a)(4)(iv). If so, the ALJ proceeds to the *fifth* and final step,

5    where they determine whether the claimant can perform any other work in the national

6    economy based on the claimant's RFC, age, education, and work experience.

7    § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

8    ### III.    DISCUSSION

9        At issue on this administrative appeal is whether the ALJ properly evaluated the

10    medical opinion and prior administrative medical finding ("PAMF") evidence of three

11    doctors: (i) Shaunna Haley, Ph.D. ("Dr. Haley"); (ii) Natalie Hurd, Psy.D. ("Dr. Hurd");

12    and (iii) J. Zuess, M.D. ("Dr. Zuess"). (Doc. 13 at 1). The PAMFs of a fourth doctor,

13    S. Fair, Ph.D. ("Dr. Fair") are also relevant, but Plaintiff does not challenge the ALJ's

14    evaluation of them. Of the four doctors, Dr. Haley issued her medical opinions first, on

15    May 15, 2019, just over three months after Plaintiff's alleged disability onset date. (AR

16    984). One week later, Dr. Fair issued her PAMFs as part of the *initial* disability

17    determination, which was ultimately made on June 10, 2019. (AR 118). On January 2,

18    2020, Plaintiff presented to Dr. Hurd, who issued her own medical findings that same day.

19    (AR 1244). Finally, as part of the *reconsideration* disability determination—which was

20    ultimately made on March 9, 2020—Dr. Zuess issued his PAMFs on February 25, 2020.

21    (AR 143, 145). Of note, only Dr. Haley and Dr. Hurd examined Plaintiff to reach their

22    opinions; Dr. Fair and Dr. Zuess did not see Plaintiff, but rather reviewed her medical

23    record to reach their PAMFs.

24        Plaintiff argues that the ALJ erred by failing to properly evaluate the medical

25    opinion or PAMF evidence of Dr. Zuess, Dr. Haley, and Dr. Hurd. (Doc. 13 at 1). In finding

26    the doctors' opinions—or certain portions of their opinions—to be unpersuasive, Plaintiff

27    argues that the ALJ failed to consider certain evidence relevant to the consistency and

28    supportability factors, leaving the ALJ's RFC determination and her ultimate denial of

disability benefits unsupported by substantial evidence. (*Id.* at 10–11, 14). Plaintiff requests that this case be remanded for further proceedings, including a proper evaluation of the opinion evidence, a new hearing, and a new decision. (*Id.* at 14). Defendant argues that the Court should affirm the ALJ's decision, because it is "sound and sufficiently supported" and "more than meets the low substantial-evidence threshold." (Doc. 14 at 2). Defendant contends that, "[a]t best, Plaintiff offers a different interpretation of the evidence that some other factfinders might have accepted, but she has not demonstrated reversible error." (*Id.*).

Under the relevant regulations, an ALJ is required to articulate her consideration of each medical opinion or PAMF, including how persuasive each is according to several enumerated factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The most important factors in evaluating persuasiveness are the first two: supportability and consistency. *See* §§ 404.1520c(a), 416.920c(a). In fact, consideration of these factors is mandatory, as the ALJ *must* explain how he or she considered the "supportability" and "consistency" factors for each medical source's opinion. § 404.1520c(b)(2). As to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinions or [PAMFs] will be." § 404.1520c(c)(1). As to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." § 404.1520c(c)(2).

## A. Dr. Haley's Medical Opinion

On May 15, 2019, Dr. Haley conducted a consultative psychological evaluation of Plaintiff and drew several conclusions with respect to Plaintiff's overall mental condition in the four functioning areas: (i) understanding and memory; (ii) sustained concentration and persistence; (iii) social interaction; and (iv) adaptation and managing oneself. (AR

985). Her conclusions were based primarily on information she gathered during her clinical interview with Plaintiff, the results of a mini-mental status exam ("MMSE"), and her own observations of Plaintiff's behavior. (*Id.*). With respect to *understanding and memory*, Dr. Haley concluded that Plaintiff "may require occasional reminders regarding work details." (AR 992). Dr. Haley explained that while Plaintiff scored highly on the MMSE and was able to understand and adequately answer questions about her personal history during the interview, Plaintiff reported having always had problems with retention and that she benefitted from using calendars, writing to-do lists, and planning her day. (*Id.*). With respect to *sustained concentration and persistence*, Dr. Haley concluded that Plaintiff "would only be able to attend to tasks for short periods of time" and "would be expected to have challenges with persistence due to depression symptoms, irritability, and feeling easily overwhelmed." (AR 993). Dr. Haley explained that although Plaintiff's thought process was goal directed and she did not require redirection, Plaintiff was "at times overwhelmed by interpersonal stimuli, which will affect her concentration and persistence in a work environment." (AR 992). Dr. Haley further explained that Plaintiff "experiences intrusive thoughts and reacts physiologically to triggers." (*Id.*).

With respect to *social interaction*, Dr. Haley concluded that Plaintiff "would be expected to be sensitive to criticism from supervisors, have conflict with co-workers, and be overwhelmed by interpersonal stimuli." (AR 993). Dr. Haley explained that Plaintiff appears to have challenges managing conflict, a poor capacity to handle stress, and that she is distrustful, fearful of others, isolated, and withdrawn. (*Id.*). Finally, with respect to *adaptation and managing oneself*, Dr. Haley concluded that Plaintiff "will have problems adjusting to changes to her routine, especially when required to leave her home" and that she "is expected to have challenges with sustained and regular attendance." (*Id.*). Dr. Haley explained that although Plaintiff voluntarily participated in inpatient treatment following her car accident and in counseling sessions with her priest, she leaves the home infrequently and only when she is able to travel in a vehicle with her roommate. (*Id.*).

The ALJ found Dr. Haley's assessment unpersuasive because it was based only on

a single office visit—and not on any review of the medical record—and "relied heavily on [Plaintiff]'s description of her symptoms and limitations" which were inconsistent with the medical record. (AR 47). The Court recognizes Plaintiff's contention that—in the mental health context—the fact that a doctor relied on a claimant's own subjective reports to generate his or her conclusion is not, on its own, a sufficient reason for an ALJ to discredit the doctor's conclusion. (Doc. 13 at 11); *see Gallant v. Saul*, 783 Fed. Appx. 688, 691 (9th Cir. 2019) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)) ("It is completely appropriate for mental health professionals to rely on their patient's subjective reports. Thus, a psychologist's reliance on subjective reports, without more, is not a legitimate reason for discrediting the psychologist's opinion."). However, as Defendant points out, "[a] mental health practitioner's reliance on a claimant's subjective reports *can* be a legitimate basis for discrediting the practitioner's opinions *if* the ALJ also provides legally sufficient reasons to discredit the claimant's testimony." *Id.* (emphasis added) (citing *Buck*, 869 F.3d at 1049); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.").

Here, the Court finds that the ALJ sufficiently discredited Plaintiff's own symptom allegations *before* finding that Dr. Haley's reliance on such symptom allegations rendered her assessment unpersuasive. Specifically, the ALJ explained that, according to the medical record, Plaintiff did *not* consistently seek or require intensive mental health support services, in-patient psychiatric hospitalizations, or in-home supports. (AR 46). The ALJ noted that the medical records do *not* indicate that Plaintiff "consistently describe[d] or exhibit[ed] cognitive or social deficits" during her frequent visits to various doctors for her physical medical issues. (*Id.*). Rather, the ALJ cites to numerous place in the record "consistently describ[ing] intact social and cognitive skills" at various times between February 2017 and February 2020. (*See* AR 47 (citing record including, for example, AR 781 (Plaintiff *denying* "difficulty concentrating, diminished interest or pleasure" and

appearing as "oriented to time, place, person & situation. Appropriate mood and affect. Normal insight. Normal judgment."); AR 791–92 (Plaintiff *denying* difficulty concentrating; appearing with appropriate mood, affect, and behavior; appearing with normal judgment, attention span, and concentration))). The ALJ further noted that, even when Plaintiff *did* have an opportunity to avail herself of mental health support through an outpatient counseling therapy program, she failed to consistently attend the program and it was terminated within one month. (AR 46). The ALJ noted that Plaintiff had a medication regimen that effectively improved her depression symptoms, as evidenced by her increase in symptoms whenever she stopped the regimen.[4] (*Id.*). The ALJ noted that Plaintiff did not request an adjustment to the medication regimen even after the death of her sister caused a period of symptom intensification, which the ALJ found to further support the regimen's effectiveness at controlling her symptoms. (*Id.*). The ALJ noted that Plaintiff attended a single crisis support session following the death of her sister, but that she *again* failed to consistently attend the program and it was terminated. (*Id.*).

All told, the ALJ identified substantial evidence indicating that Plaintiff's symptom allegations were inconsistent with the medical record. Notably, and as Defendant points out, Plaintiff does not challenge the ALJ's analysis of Plaintiff's subjective symptom testimony either. Thus, the Court finds that the ALJ did *not* err in citing to Dr. Haley's heavy reliance on Plaintiff's own symptom and limitation testimony as a primary reason to find her conclusions unpersuasive because the ALJ provided legally sufficient reasons to discredit Plaintiff's symptom testimony.

---

[4] The ALJ additionally stated: "The claimant reported she was unable to maintain a constant medication program due to financial hardships[.] The evidence does not reflect that the claimant has attempted to consistently avail herself of free or reduced medical care available to her in the community, suggesting her symptoms were not as debilitating as described." (AR 46).

Although neither party addresses this excerpt from the ALJ's decision, the Court notes that this reasoning is unfounded and speculative. Plaintiff's failure to avail herself of free or reduced medical care available to her in the community says *nothing* about the nature of Plaintiff's mental health and certainly does not suggest that she is exaggerating or fabricating her depressive symptoms.

**B.  Dr. Hurd's Medical Opinion**

On January 2, 2020, Dr. Hurd conducted a consultative psychological evaluation of Plaintiff and made several conclusions with respect to Plaintiff's overall mental condition in the four functioning areas. (AR 1244). Her conclusions were based primarily on information she gathered from Plaintiff during a clinical interview, the results of an MMSE, a review of several medical records, and Dr. Hurd's own observations of Plaintiff's behavior. (AR 1244–50). With respect to *understanding and memory*, Dr. Hurd found that Plaintiff "was able to understand and answer simple questions regarding her history" and that "[m]emory problems were not observed or reported." (AR 1251). However, Dr. Hurd noted that Plaintiff's MMSE score (25/30) had decreased since her evaluation with Dr. Haley. (*Id.*). With respect to *sustained concentration and persistence*, Dr. Hurd found that Plaintiff "was able to sustain concentration throughout the 60-minute exam" and that "[d]istractibility was not observed." (*Id.*). However, Dr. Hurd noted that Plaintiff reported short-term memory problems and that she is "very forgetful." (*Id.*). Dr. Hurd explained that Plaintiff "forgets conversations and has to write things down in order to remember" and that she "does things but does not remember doing them." (*Id.*).

With respect to *social interaction*, Dr. Hurd found that Plaintiff presented as "severely anxious and tearful" and that she had a panic attack during the evaluation. (AR 1252). Dr. Hurd noted that Plaintiff reported a "very poor social life as a result of depression and anxiety" and that she does not have friends and does not socialize with others. (*Id.*). Dr. Hurd further noted that Plaintiff is untrusting of others, may become aggressive and violent with others when angered, and generally fearful for her safety and experiences panic attacks outside her home. (*Id.*). Finally, with respect to *adaptation and managing oneself*, Dr. Hurd found that Plaintiff "does not handle stress well" and that she "may misinterpret situations and overreact under normal circumstances." (*Id.*). Dr. Hurd also noted Plaintiff's reports of physical health problems, chronic pain, and limited mobility which affect her ability to sit, stand, or walk for long periods of time and prevent her from completing most basic living tasks without assistance. (*Id.*).

The ALJ found Dr. Hurd's assessment unpersuasive because Dr. Hurd "seemingly" based her report primarily on Plaintiff's own description of her symptoms and limitations "which are not consistently supported in the medical record." (AR 47). As explained above, an ALJ should generally *not* dismiss or discredit a mental health practitioner's conclusion solely because the practitioner based that conclusion on the claimant's own subjective symptom testimony. *See Gallant*, 783 Fed. Appx. at 691. However—and again, as noted above—an ALJ *may* discredit the practitioner's opinion in such a situation so long as the ALJ *also* provides a legitimate basis for discrediting the claimant's symptom testimony. *See id.* As with Dr. Haley above, the Court finds that the ALJ in this case sufficiently discredited Plaintiff's own mental health symptom allegations by pointing out numerous reasons why such allegations were in conflict with the medical record. (*See supra* pt. III, sec. A (listing ways in which medical record conflicted with Plaintiff's symptom reports); AR 47 (ALJ explaining that Plaintiff "did not consistently seek or maintain a mental health treatment program and she described improved symptom control during periods of medication maintenance, further eroding the value of Dr. Hurd's findings")). Having demonstrated such inconsistencies, the ALJ was permitted to discredit Dr. Hurd's opinion to the extent her opinion was based on Plaintiff's symptom allegations, and the ALJ did not err by doing so.

The Court is unpersuaded by Plaintiff's other arguments. Plaintiff points out that the ALJ "failed to note that Dr. Hurd *did* review certain [medical] records," unlike Dr. Haley. (Doc. 13 at 12). Indeed, the ALJ did not expressly mention this in the decision. (*See* AR 47). However, it is also true that the ALJ did not point to Dr. Hurd's failure or inability to review the record as a reason for finding his opinion unpersuasive in the first place. Rather, the ALJ found Dr. Hurd's opinion to be unsupported for other reasons, such as Plaintiff's symptom reporting and her overall treatment record. Thus, even if the ALJ *had* noted that Dr. Hurd considered the medical record, it is unclear how this would have changed his persuasive analysis given the ALJ's central finding that the medical record was unsupportive of Dr. Hurd's opinion anyway. Although the fact that Dr. Hurd considered

1   Plaintiff's medical record adds a level of credibility that was not present with Dr. Haley's

2   opinion, the Court does not find the ALJ's failure to mention this to be a reversible error.

3       Next, Plaintiff points out that the ALJ failed to "acknowledge that Dr. Zuess

4   specifically cited Dr. Hurd's observation of presentation as severely anxious and

5   moderately depressed when supporting Dr. Zuess' own marked opinion." (*Id.*). Again,

6   while this may be true, it is not entirely clear how this means that the ALJ erred in finding

7   Dr. Hurd's assessment unpersuasive. The fact that Dr. Zuess relied on Dr. Hurd's

8   observation is at least some evidence of consistency in the record. However, Plaintiff fails

9   to meaningfully explain how this one instance of consistency would or should have been

10   enough to move the needle from unpersuasive to persuasive in the ALJ's analysis,

11   particularly considering all the other *inconsistencies* that the ALJ noted between the record

12   and Plaintiff's symptom allegations.

13       Next, Plaintiff argues that Dr. Hurd's conclusion includes a "sufficiently articulated

14   opinion to support a finding of disability under SSR 85-15." (*Id.*). SSR 85-15 provides:

15
16   Where a person's only impairment is mental, is not of listing
     severity, but does prevent the person from meeting the mental
16   demands of past relevant work and prevents the transferability
     of acquired work skills, the final consideration is whether the
17   person can be expected to perform unskilled work. The basic
     mental demands of competitive, remunerative, unskilled work
18   include the abilities (on a sustained basis) *to understand, carry
     out, and remember simple instructions; to respond
19   appropriately to supervision, coworkers, and usual work
     situations; and to deal with changes in a routine work setting*.
20
21   A substantial loss of ability to meet any of these basic work-
     related activities would severely limit the potential
22   occupational base. This, in turn, *would justify a finding of
     disability because even favorable age, education, or work
23   experience will not offset such a severely limited occupational
     base*.
24

25   SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) (emphasis added). Plaintiff points to Dr. Hurd's

26   conclusion that Plaintiff "does not handle stress well and may misinterpret situations and

27   overreact[s] under normal circumstance[s]," and argues that this conclusion is sufficient

28   for a disability finding under SSR 85-15. (Doc. 13 at 12–13). The Court is entirely

11

1   unpersuaded. As Defendant points out, this conclusion by Dr. Hurd does not say anything

2   with respect to the *degree* of Plaintiff's workplace limitations. (*See* Doc. 14 at 18). Just

3   because Plaintiff handles stress poorly, misinterprets situations, and overreacts does not

4   mean that she is necessarily unable "to understand, carry out, and remember simple

5   instructions; to respond appropriately to supervision, coworkers, and usual work situations;

6   and to deal with changes in a routine work setting." SSR 85-15. Unlike Dr. Haley—who at

7   least opined as to how Plaintiff's mental impairments may affect her in the workplace (*see*

8   AR 992–93)—Dr. Hurd's conclusions largely repeated what Plaintiff was reporting during

9   the interview and failed to offer any meaningful opinion as to how the symptoms Plaintiff

10  was reporting (and that Dr. Hurd was observing) might affect her functional abilities in the

11  workplace. (*See* AR 1251–52).

12          Finally, Plaintiff takes issue with the ALJ's finding that Plaintiff failed to

13  "consistently seek or maintain a mental health treatment program and [had] improved

14  symptom controls during periods of medication maintenance." (Doc. 13 at 13 (citing AR

15  47)). Plaintiff argues that the ALJ "only cited three notes for the allegation that medication

16  controlled her symptoms." (*Id.*). Plaintiff then addresses each note and explains how it fails

17  to offer the support the ALJ implies it does. (*Id.* at 13–14). The Court is unpersuaded. The

18  ALJ's finding that Plaintiff had "improved symptom controls during periods of medication

19  maintenance" is just one small part of the ALJ's reasoning. Even if Plaintiff is correct that

20  this finding is insufficiently supported, the ALJ's consideration of the supportability and

21  consistency factors encompassed other evidence from the medical record, such as

22  inconsistencies between Plaintiff's symptom reporting and Dr. Hurd's opinion and the fact

23  that Plaintiff failed to consistently seek or maintain mental health treatment programs.

24          In sum, the ALJ's credibility finding with respect to Dr. Hurd is supported by

25  substantial evidence. The ALJ adequately considered the supportability factor by noting

26  that Dr. Hurd's opinion—like Dr. Haley's—was largely supported by Plaintiff's own

27  symptom testimony which the ALJ found to be inconsistent with the medical record.

28  Likewise, the ALJ adequately considered the consistency factor by pointing to Plaintiff's

1  prolonged failure to seek or maintain a mental health treatment program, a fact which the

2  ALJ found to be inconsistent with Dr. Hurd's opinion of significant functional limitations.

3  Therefore, the Court cannot find that the ALJ erred by failing to adequately support his

4  conclusion that Dr. Hurd's opinion was unpersuasive.

5      **C.  Dr. Zeuss' PAMFs**

6      The Court finds that the ALJ sufficiently explained his determination that Dr. Zuess'

7  PAMF of a marked concentration limitation was unpersuasive. On February 25, 2020, Dr.

8  Zuess reviewed Plaintiff's medical record at the request of the Agency and issued his own

9  mental residual functional capacity assessment. (AR 123–45). After analyzing Plaintiff's

10  medical records, Dr. Zuess found that the records indicated a "worsening" of her

11  impairments following her May 2019 consultative examination with Dr. Haley. (AR 137).

12  Dr. Zuess noted that Plaintiff presented to Dr. Haley with an "intact" memory and that Dr.

13  Haley found that Plaintiff "did not exhibit significant problems with attention or

14  concentration" and instead "remained focused throughout the evaluation." (AR 136). In

15  contrast, Dr. Zuess noted that Plaintiff presented to Dr. Hurd approximately eight months

16  later "as severely anxious and moderately depressed" and "in psychiatric treatment." (AR

17  137). Dr. Zuess noted that "[m]oderate limitations were assigned in all areas on the initial

18  [determination in May 2019]," but concluded that "currently, an inability to sustain is

19  warranted." (*Id.*). Dr. Zuess then noted that Plaintiff had been psychiatrically admitted

20  following her car accident in February 2017 and that "[s]he has had intermittent mental

21  treatment." (*Id.*). Dr. Zuess concluded that, "[c]onsidering also the mental effects of

22  reported pain [secondary to injuries sustained in the accident], it is reasonable to assign an

23  inability to sustain beginning at the [alleged onset date]." (*Id.*). He then stated, "Please see

24  MRFC," referring to his mental residual functional capacity evaluation where he further

25  explained his conclusion that an "inability to sustain" finding was appropriate. (*Id.*).

26      In Dr. Zuess' mental residual functional capacity analysis, Dr. Zuess made

27  conclusions on each of the four main categories of mental functional limitations. (AR 141–

28  42). With respect to *understanding and memory limitations*, Dr. Zuess found only moderate

13

limitations and concluded that Plaintiff "is able to understand and remember simple instructions." (AR 142). With respect to *social interaction limitations*, Dr. Zuess again found only moderate limitations and concluded that "a work setting with limited social interaction would be preferable for [Plaintiff]." (AR 143). With respect to *adaption limitations*, Dr. Zuess again found only moderate limitations and concluded that Plaintiff "is able to adapt to changes in a simple work environment." (*Id.*). However, with respect to *sustained concentration and persistence limitations*, Dr. Zuess found a *marked* limitation as opposed to only moderate limitations. (AR 142). Specifically, Dr. Zuess found that Plaintiff "has a poor ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*). This aligned with his previous finding—after reviewing the medical records—that an "inability to sustain" was warranted. (*See* AR 137). At bottom, Dr. Zuess concluded that "the available evidence indicates that [Plaintiff] does *not* have the basic mental functional capacities necessary to complete a regular work week." (AR 143 (emphasis added)).

Before turning to the ALJ's persuasiveness analysis of Dr. Zuess' PAMFs, the Court briefly compares his PAMFs to those of Dr. Fair, who reviewed Plaintiff's medical records and made her own PAMFs in May 2019, approximately nine months prior. (*See* AR 100–18). At least with respect to their mental residual functional capacity assessments, Dr. Fair and Dr. Zuess' PAMFs are nearly identical. (*Compare* AR 114–15 (Dr. Fair) *with* AR 141–43 (Dr. Zuess)). Each found only *moderate* limitations as to understanding and memory, social interaction, and adaptation, and each therefore concluded that Plaintiff was able to understand and remember simple instructions, would benefit from a work setting with limited social interaction, and was able to adapt to changes in a simple work environment. (*See id.*). However, whereas Dr. Zuess found a *marked* limitation in Plaintiff's ability to concentrate, persist, and maintain pace, Dr. Fair found only a *moderate* limitation. (AR 142; 114–15). Likewise, whereas Dr. Zuess concluded that Plaintiff did *not* have the basic mental functional capacities necessary to complete a regular workweek, Dr. Fair simply

concluded that Plaintiff "is able to perform simple, unskilled tasks in a setting with limited social interaction." (AR 143; 114–15).

The ALJ combined his persuasive analysis of the PAMFs of Dr. Zuess and Dr. Fair and did not distinguish between the two. (*See* AR 47–48). In fact, the names of Dr. Zuess and Dr. Fair are not found anywhere in the decision. (*See generally* AR 37–51). Nevertheless, the ALJ found their PAMFs to be "generally persuasive," but *rejected* Dr. Zuess' finding of marked limitations in concentrating, persisting, and maintaining pace, as well as his finding that Plaintiff could not complete a regular workweek. (AR 47–48). The ALJ's analysis of Dr. Zuess and Dr. Fair's PAMFs consists of two paragraphs. The first paragraph sets forth what the Court summarized above as it relates to their PAMFs on Plaintiff's mental functional capacity:

> The undersigned has considered the prior administrative findings regarding the claimant's mental capacity to perform work-related functions. . . . The opinions are analyzed as statements from non-examining expert sources. The prior administrative findings stated the claimant had *moderate* limitations in understanding, remembering, and applying information; *moderate* limitations in interacting with others; *moderate to marked* limitations in concentrating, persisting, or maintaining pace; and *moderate* limitations adapting or managing herself. . . . These prior administrative findings further stated the claimant possessed the basic mental functional capacities to complete a regular workweek with some limitations with her abilities to interact with others.

(*Id.* (citations to record omitted)).[5] In the second paragraph of the ALJ's persuasiveness analysis, the ALJ explains why Dr. Zuess and Dr. Fair's PAMFs are generally persuasive in light of the evidence in Plaintiff's medical record:

> Based on the evidence, the undersigned concludes [that Dr.

_____

[5] The Court notes that the final sentence of the ALJ's first paragraph discussing the PAMFs glosses over Dr. Zuess' conclusion that Plaintiff "does *not* have the basic mental functional capacities necessary to complete a regular work week," (AR 143 (emphasis added)), by generally stating that Dr. Zuess and Dr. Fair's PAMFs *both* found that Plaintiff has the "basic mental functional capacities to complete a regular workweek with some limitations." (AR 147). Plaintiff does not raise this issue in her argument, however, and the Court does not find it to constitute harmful error.

Zuess and Dr. Fair] adequately considered the medical evidence of record regarding the claimant's mental impairments and these assessments are generally persuasive. The opinions are supported by the evidence indicating the claimant's mental disorder is severe and causes some limitation as it required psychological sessions and medical management. However, as indicated in the claimant's medical record, there were no reported psychosis or other significant mental symptoms from the claimant's psychologist. Furthermore, during numerous examinations, the claimant did not consistently exhibit or describe significant cognitive or social deficits, further supporting the value of these assessments.

(AR 47–48). In other words, the ALJ recognized that medical evidence in the record supports the existence of at least *some* mental disorder, and that Dr. Zuess and Dr. Fair's findings of "moderate" limitations—as opposed to "none" or "mild" limitations—in each of the four categories was therefore supported and not contradicted by the record. However, the ALJ further states that such evidence does *not* support a finding of limitations *greater* than "moderate." Specifically, the ALJ points to the absence of any mental symptoms being reported by Plaintiff's psychologist *and* Plaintiff's failure to exhibit or describe any cognitive or social deficits in any of the "numerous examinations" she underwent.

In the second paragraph's final two sentences, the ALJ directly addresses Dr. Zuess' finding of marked limitations in concentrating, persisting, and maintaining pace, further explaining why he discredited this finding:

Although the undersigned found the marked concentration limitation to be inconsistent with the medication record, the undersigned reasons that the prior administrative findings are consistent with the determination that the claimant is capable of significant work-related activities. Therefore, the undersigned found these assessments to be generally persuasive.

(AR 48). In sum, the ALJ accepted as persuasive all of Dr. Zuess and Dr. Fair's PAMFs with the exception of Dr. Zuess' marked concentration limitation. (*Id.*).

Plaintiff argues that the ALJ's discrediting of Dr. Zuess' marked concentration limitation finding constituted error because the ALJ failed to expressly consider the supportability and consistency factors in concluding that it was unpersuasive. (Doc. 13 at

9–10). As to supportability, Plaintiff argues that the ALJ failed to fully consider Dr. Zuess'
explanation supporting his finding of a marked concentration limitation. (*Id.* at 9 (quoting
AR 137)). First, Plaintiff points to Dr. Zuess' finding that consideration of records
associated with Plaintiff's consultative examination with Dr. Hurd demonstrated a
"worsening" of Plaintiff's mental condition. (*Id.*). Although the ALJ's two-paragraph
analysis of the PAMFs did not explicitly reference Dr. Hurd's examination, the Court finds
that the ALJ nonetheless considered this point of supportability earlier in the decision when
he found Dr. Hurd's conclusions to be unpersuasive. *See supra* pt. III, sec. B. The ALJ did
not err merely because he failed to repeat his findings with respect to Dr. Hurd's
examination in the PAMF analysis.

Second, Plaintiff points to Dr. Zuess' reference to Plaintiff's "intermittent mental
treatment" as an aspect of supportability that the ALJ did not consider. (Doc. 13 at 9). To
be sure, Plaintiff's intermittent mental treatment over the relevant period is at least
somewhat supportive of Dr. Zuess' ultimate conclusion that Plaintiff has a marked
concentration limitation. However, as with Dr. Hurd's examination records, the ALJ
expressly considered Plaintiff's intermittent mental treatment in his decision. In discussing
Plaintiff's mental symptoms, the ALJ found that Plaintiff "has not consistently sought or
required intensive mental health support services, in-patient psychiatric hospitalizations,
or in-home supports." (AR 46). The ALJ also summarized the history of Plaintiff's mental
health treatment, including an outpatient counseling therapy program, her medication
regimen, and a single crisis support session that she attended following her sister's death.
(*Id.*). The ALJ found that Plaintiff stopped her medication regimen at least twice, and that
both times she reported increases in her mental symptoms. (*Id.*). The ALJ also found that
Plaintiff exhibited poor attendance at both the outpatient counseling therapy program and
the crisis support session, and that both programs were terminated as a result. (*Id.*).

Subsequently, in analyzing the persuasiveness of Dr. Zuess' PAMF, the ALJ
specifically referred to Plaintiff's intermittent mental treatment. (AR 48). The ALJ
recognized that Plaintiff's mental treatment record *supported* the conclusion that Plaintiff's

mental disorders existed and that they were "severe and cause[d] some limitation as [they] required psychological sessions and medical management." (*Id.*). In this regard, Plaintiff's intermittent mental treatment supported Dr. Zuess' (and Dr. Fair's) findings of at least moderate limitations in the four categories of mental functional limitations, findings which the ALJ found to be "generally persuasive." (*Id.*). However, the ALJ further explained that Plaintiff's mental treatment record *failed* to support Dr. Zuess' PAMF in other ways. He noted that the record contained an absence of mental symptoms being reported by Plaintiff's psychologist *and* Plaintiff's failure to exhibit or describe any cognitive or social deficits in any of the "numerous examinations" she underwent. (*Id.*). As with Dr. Hurd's examination, the ALJ was not required to repeat his entire discussion of Plaintiff's intermittent mental treatment record in his persuasiveness analysis only to reach the same conclusion that the record failed to support Dr. Zuess' finding of a marked concentration limitation. Reading the ALJ's decision as a whole, the Court finds that the ALJ adequately considered the extent to which Plaintiff's intermittent mental treatment record was supportive—and unsupportive—of Dr. Zuess' findings. In sum, the ALJ considered the evidence in the record that was relevant to the factor of supportability.

As to the consistency factor, Plaintiff argues that the ALJ failed to consider the consistency that exits between Dr. Zuess' PAMF and Dr. Hurd's report. (Doc. 13 at 10). Although Plaintiff appears correct that the ALJ never *explicitly* acknowledged that any consistencies existed between the two, the Court finds that the ALJ nonetheless considered the consistency factor in an adequate manner. First, the ALJ specifically noted that Dr. Zuess' marked concentration limitation was "inconsistent with the medication record." (AR 48). The ALJ had discussed Plaintiff's medication record previously in the decision, recognizing that it supported the existence of Plaintiff's mental symptoms and further demonstrated that Plaintiff's medication regimen was effective at controlling her symptoms during the periods in which she maintained the regimen. (AR 46). Second, the ALJ's persuasiveness analysis specifically considered the fact that Plaintiff's overall mental treatment record failed to demonstrate "psychosis or other significant mental

symptoms from [Plaintiff]'s psychologist" and that "during numerous examinations, [Plaintiff] did not consistently exhibit or describe significant cognitive or social deficits." (AR 48). In this manner, Plaintiff's mental treatment record was inconsistent with Dr. Zuess' finding of a limitation that was greater than moderate. Third, the ALJ considered that Plaintiff failed to consistently seek mental health support services and demonstrated poor attendance at the outpatient counseling therapy program and the crisis support session. (AR 46). Again, this demonstrated an inconsistency between the record and any finding of a marked limitation. The Court finds that the ALJ meaningfully considered the evidence in the record relevant to the consistency factor.

All told, the ALJ found that Dr. Zuess' PAMF was "generally persuasive." (AR 47–48). The ALJ accepted Dr. Zuess' conclusion that Plaintiff suffered from moderate limitations across the four categories of functional limitations. However, the ALJ found Dr. Zuess' finding of a *marked* limitation in the concentration and persistence category unpersuasive. In making these persuasiveness findings, the Court finds that the ALJ meaningfully considered the evidence that Dr. Zuess relied on to support his PAMF *and* the evidence that was relevant to the factor of consistency between Dr. Zuess' PAMF and the rest of Plaintiff's medical record. The ALJ's ultimate conclusion—finding Dr. Zuess' PAMFs to be generally persuasive, *except* for his marked concentration limitation finding—was therefore supported by substantial evidence and was not in err.

## IV.    CONCLUSION

The Court finds that the ALJ's persuasiveness determinations with respect to Dr. Haley, Dr. Hurd, and Dr. Zuess were supported by substantial evidence and that they included adequate consideration of the supportability and consistency factors.

Accordingly,

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **IT IS ORDERED** that the May 18, 2021 final revised decision of the Commissioner of Social Security is **affirmed**.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate this action**.

      Dated this 8th day of May, 2023.

Honorable Steven P. Logan
United States District Judge